IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHANI ESPINOZA, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-cv-0878-E |
| | § § | |
| CAREERSTAFF UNLIMITED INC., | § § | |
| Defendant. | § § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant CareerStaff Unlimited, Inc.'s Motion to Compel Arbitration (Doc. 14). At issue is whether there is a valid arbitration agreement between CareerStaff and Plaintiff Stephani Espinoza. After careful consideration of the motion, the response, the reply, the supporting exhibits, the applicable law, and any relevant portions of the record, the Court grants the motion to compel.

CareerStaff is Plaintiff's former employer. As alleged in Plaintiff's complaint, she began working for CareerStaff in January 2019 as a nurse recruiting assistant and was promoted to a recruiter position later that year. In March 2020, she requested intermittent leave under the Family and Medical Leave Act (FMLA) to deal with "chronic, intractable migraines." The request was approved, but later her supervisor expressed frustration with Plaintiff's need to take occasional unforeseeable leave. Plaintiff was eventually written up for an incident involving her absence from work. In September 2020, Plaintiff had an unrelated surgery and requested continuous FMLA leave to recover. That request was approved. When she was out on leave, her existing group of already-recruited nurses were reassigned to other recruiters. When she returned to work

1

on December 14, 2020, CareerStaff did not reassign Plaintiff's group to her and she had to start "from scratch." The day after her return, Plaintiff informed her supervisor that she planned to undergo in vitro fertilization in 2021. Her supervisor reacted with concern about Plaintiff's absence from work. On December 23, 2020, Plaintiff's supervisor gave Plaintiff a performance warning, and Plaintiff was fired on December 28, 2020. Plaintiff asserts claims under the FMLA for: (1) CareerStaff's failure to reinstate her to the same position she held when her continuous leave commenced or to an equivalent position, and (2) wrongful termination because she was fired for FMLA-covered absences and to prevent her from exercising her right to take future FMLA leave.

In its motion to compel arbitration, CareerStaff asserts that it and Plaintiff entered into a Mutual Arbitration Agreement ("the Agreement") on May 28, 2019, that requires her claims to be submitted to binding arbitration. CareerStaff states that Plaintiff electronically signed the Agreement through the online system the company used for employee document review. Plaintiff does not dispute that she electronically signed the Agreement. She contends the Court should deny the motion to compel arbitration because CareerStaff is not named in the Agreement and did not sign it. Plaintiff argues the Agreement is between her and Genesis Administrative Services LLC. CareerStaff maintains that it signed the Agreement.

The Agreement states that it is between "me" and "my Employer." "Employer" for purposes of the agreement includes "the business entity that employs me, including without limitation, Genesis Administrative Services LLC and/or any direct or indirect parent, subsidiary, division or affiliate of Genesis Administrative Services LLC to whom I applied for employment and/or with whom I am and/or was at any time employed." The Agreement provides for

> resolution by arbitration of all disputes, claims or controversies, past, present or future, including without limitation, claims arising out of or related to my application for employment, employment, and/or termination of my employment that Employer may have against me or that I may have against any of the following: Employer, or any of its . . . affiliates or agents . . . medical facilities, business partners and clients and providers (for and/or at which I perform services) . . . each and all of which may enforce this agreement.

Plaintiff's electronic signature appears at the bottom of the agreement. Under her signature, the Agreement has a blank for "Company/Center Name." "CSU Fulfillment" is typed in the blank. Below that is the "signature of the authorized representative," Michael Berg, the "Assistant Secretary, Genesis Administrative Services LLC" as the "Contracted administrative services provider for the above-listed company."

## Applicable Law

The Federal Arbitration Act provides that a written agreement to arbitrate disputes arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute does not permit a trial court to exercise any discretion, "but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

To assess whether a claim must be arbitrated, the Court conducts a two-step analysis. *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019). The first step is contract formation—whether the parties entered into *any arbitration agreement at all*. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). If the answer is yes, the Court proceeds to the second step. *Lloyd's Syndicate*, 921 F.3d at 514. The second step involves contract interpretation to determine whether a plaintiff's claim is covered by the arbitration agreement. *Kubala*, 830 F.3d at 201. Ordinarily both steps are questions for the court. *Id.* The Court applies

3

the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but it does not apply this policy when determining whether a valid agreement exists. *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008).

To be enforceable, an arbitration agreement must be in writing and signed by the party invoking it. *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002). Whether the parties entered into a valid arbitration contract turns on state contract law. *Kubala*, 830 F.3d at 202; *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement. *Sherer*, 548 F.3d at 381; *see Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The court should examine and consider the entire instrument so it can reconcile and give full effect to all the contract's provisions so that none of them will be rendered meaningless. *See Coker*, 650 S.W.2d at 393-94.

Under Texas law, the party seeking to compel arbitration bears the initial burden to establish the existence of an agreement to arbitrate. *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism'd). The party seeking to compel arbitration must prove by a preponderance of the evidence that such an agreement exists. *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 502–03 (5th Cir. 2019). If the party seeking to compel arbitration establishes the existence of an arbitration agreement, the burden shifts to the party opposing arbitration to show why the agreement should not be enforced. *In re Sands Bros. & Co.*, 206 S.W.3d 127, 130 (Tex. App.—Dallas 2006, no pet.); s*ee Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297, 301 (5th Cir. 2004).

**Analysis**

The outcome of the motion before the Court comes down to whether an agreement to arbitrate exists between Plaintiff and CareerStaff. The Agreement is between Plaintiff and her "Employer." "Employer" is defined as "the business entity that employs" Plaintiff, which includes Genesis Administrative Services ("GAS") and any of GAS's direct or indirect parents, subsidiaries, divisions, or affiliates with whom Plaintiff was at any time employed. CareerStaff's name does not appear in the Agreement. The Agreement is signed by Plaintiff and by Michael Berg who is identified as GAS's Assistant Secretary, and GAS is identified as the "administrative services provider for the above-listed company." The "above-listed company" is "CSU Fulfillment."

In its motion, CareerStaff asserts that it is specifically identified in the Agreement as the "Company/Center" that employed Plaintiff. But "CSU Fulfillment" is named, not "CareerStaff Unlimited, Inc." CareerStaff asserts that CSU Fulfillment is "incontrovertibly" CareerStaff. It relies on information contained the affidavit of Gwendolyn Eagen, the Vice President for Corporate Human Resources for GAS, for this statement. There is nothing within the four corners of the Agreement to indicate that CSU Fulfillment is the same entity as CareerStaff Unlimited, Inc., the Defendant in this case. Nor is CSU Fulfillment expressly identified as the "Employer."

The identity of Plaintiff's "Employer," the other party to the Agreement, is not apparent from the face of the Agreement. The Court finds it appropriate under the circumstances to consider parol evidence on the identity and relationship of the contracting parties. *See In re Ledet*, No. 04-04-00411-CV, 2004 WL 2945699, at *3 (Tex. App.—San Antonio Dec. 22, 2004, orig. proceeding) (where party to contract was only identified as "resident," parol evidence admissible to determine who parties to agreement are); *Jordan v. Rule*, 520 S.W.2d 463, 465 (Tex. App.—

Houston [14th Dist.] 1975, no writ) (where names of contracting parties are not clearly indicated on face of writing, parol testimony is generally admissible to show identity). CareerStaff relies on Eagan's affidavit. Eagan says that GAS is an agent for and affiliate of CareerStaff. According to Eagen, CareerStaff uses a password-protected, electronic database called the "OnTrack System." CareerStaff, "through its administrative services company" GAS, uses OnTrack to maintain records relating to employee agreements and policies. Employees use the system to review and acknowledge various employment documents. The Agreement is a form that can be accessed and electronically signed through OnTrack. CareerStaff used the OnTrack System in 2019 when Plaintiff electronically signed the Agreement. The Agreement was countersigned by Berg, who is an authorized representative and agent of CareerStaff.

In opposition to the motion, Plaintiff has presented CareerStaff's 2019 "Texas Franchise Tax Public Information Report." She argues that CareerStaff cannot be an affiliate of GAS because GAS is not listed on the form as an entity that owns an interest of ten percent or more in CareerStaff.

The Court concludes CareerStaff has established by a preponderance of the evidence that a valid arbitration agreement exists between it and Plaintiff. The Agreement is between Plaintiff and her "Employer." As Plaintiff herself has alleged in her complaint, CareerStaff was her employer when the Agreement was signed. Plaintiff reviewed and signed the document through CareerStaff's OnTrack System. Thus, as the "the business entity that employed" Plaintiff, CareerStaff is included in the definition of "Employer" in the Agreement. The Agreement is not signed by CareerStaff. It is signed by a representative of GAS, as the administrative services provider for a company named CSU Fulfillment. While CareerStaff has not presented direct evidence on the relationship between CSU Fulfillment and CareerStaff, it has presented evidence

6

that GAS administers CareerStaff's OnTrack System by which CareerStaff maintains certain employee records and that GAS is an agent for CareerStaff. Where an agent signs a contract requiring arbitration, the principal is bound by the arbitration agreement. *The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd.*, 523 F.3d 528, 538 (5th Cir. 2008); *see E.I. DuPont de Nemours & Co. v. Phone Poulenc & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001) (nonsignatory can be bound to arbitrate if under traditional principles of contract and agency law it is akin to signatory). Plaintiff has failed to counter the evidence that GAS is an agent of CareerStaff's for purposes of administering the OnTrack System and signed the Agreement on behalf of CareerStaff, its principal. Considering all the circumstances under which Plaintiff entered into the Agreement, the Court finds that CareerStaff has shown by a preponderance of the evidence that GAS signed the Agreement as CareerStaff's agent. The Court concludes a valid arbitration agreement exists between Plaintiff and CareerStaff. The parties do not dispute that Plaintiff's claims, which arise out of her employment with CareerStaff, are within the scope of the Agreement, and the Court concludes that they are.

CareerStaff asks the Court to dismiss Plaintiff's claims. Plaintiff asserts that in the event the Court grants the motion to compel, the action should be stayed, not dismissed. The FAA provides for a stay upon application of one of the parties. 9 U.S.C. § 3. The Fifth Circuit has held, however, that district courts have discretion to dismiss cases in favor of arbitration, stating that section 3 "was not intended to limit dismissal of a case in the proper circumstances. If all of the issues raised before the district court are arbitrable, dismissal of the case is not inappropriate." *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999). Having determined all of Plaintiff's claims are subject to binding arbitration, the Court concludes there is no other reason to retain jurisdiction over this case and dismissal of this action with prejudice is more appropriate

than to stay and abate the case as no purpose would be served by a stay. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (dismissal of case preferred when staying case and court retaining jurisdiction serves no purpose). Accordingly, because the Court orders all of Plaintiff's claims must be submitted to arbitration, this case is dismissed with prejudice. *See* 9 U.S.C. §§ 3 & 4; *Vican, Inc. v. Incipio Techs., Inc.*, No. 3:15-CV-2720-L, 2016 WL 687155, at *1 (N.D. Tex. Feb. 2, 2016) (Lindsay, J.).

**SO ORDERED.**

Signed February 2, 2022.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE